## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF:<br>JAMES ALBERT D'ANGELO, SR., and<br>CAROLYN MARIE D'ANGELO | CIVIL ACTION NO.  14-2084<br><br><br>Bankruptcy No.  11-14926 |

DuBois, J.                                              March 31, 2015

### M E M O R A N D U M

### I.    INTRODUCTION

This is a bankruptcy appeal.  Debtors James Albert D'Angelo, Senior, and Carolyn Marie D'Angelo (collectively, "debtors") appeal from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania granting J.P. Morgan Chase Bank, N.A.'s ("JPM") Motion to Dismiss Second Amended Adversary Complaint and for Abstention.  The Bankruptcy Court dismissed debtors' only remaining claim, Count Nine of debtors' Second Amended Complaint, in which debtors seek avoidance of an equitable lien pursuant to 11 U.S.C. § 547(b). For the following reasons, the Court affirms the rulings of the Bankruptcy Court.

### II.    BACKGROUND

The facts of the case have been previously set forth in the opinions of the Bankruptcy Court.  See In re D'Angelo, 505 B.R. 650 (Bankr. E.D. Pa. 2014) (dismissing amended complaint and granting motion to dismiss); In re D'Angelo, No. 11-00744, 2012 WL 27541 (Bankr. E.D. Pa. 2012) (granting motion for fees and costs); In re D'Angelo, 475 B.R. 424 (Bankr. E.D. Pa. 2012) (dismissing amended complaint in part, abstaining in part, and denying motion for preliminary injunction).  Further, this Court has previously recounted such facts in

detail in its Memoranda dated March 20, 2013 and August 7, 2012.  The Court repeats those facts in this Memorandum only as necessary to resolve the issues presently before the Court.

This bankruptcy proceeding arises from a dispute regarding property previously owned by debtors in Doylestown, Pennsylvania, on which JPM sought to foreclose in state court. Debtors previously owned real estate located at 102 Pickwick Drive in Doylestown, Pennsylvania ("Doylestown property").  A mortgage on the Doylestown property, dated August 11, 2005, secured a note of $1,462,500.  Through a series of assignments, JPM became the mortgage holder and, on July 3, 2006, filed a foreclosure action in the Court of Common Pleas of Bucks County ("Court of Common Pleas" or the "state court"), J.P. Morgan Chase Bank National Association v. D'Angelo et al., No. 2006–6047 ("foreclosure action").

Debtors opposed the foreclosure proceedings, asserting that the mortgage and note, in addition to several other mortgages, were invalid because they were forged by James D'Angelo, Junior ("D'Angelo Junior"), Mr. D'Angelo's son.  Debtors sought a declaratory judgment in the Court of Common Pleas that the note and mortgage were invalid, void or otherwise unenforceable due to D'Angelo Junior's forgery.  The declaratory judgment action, D'Angelo et al. v. JP Morgan Chase Bank, N.A., et al., No. 2007–00041–26–1, was consolidated with the foreclosure action in the Court of Common Pleas.

On April 11, 2011, the Court of Common Pleas granted partial summary judgment to JPM and imposed an equitable lien of $1,339,387.30, effective August 11, 2005, against the

Doylestown property ("equitable lien").[1]  The equitable lien was awarded because one of

debtors' prior mortgages was satisfied when D'Angelo Junior obtained the allegedly fraudulent

August 11, 2005 mortgage, which was later assigned to JPM.  See In re D'Angelo, 475 B.R. at

436.[2]  Debtors acknowledge that the original mortgage that was satisfied was valid and

enforceable.  Id.

       That same day, debtors filed a Chapter 13 bankruptcy petition in the United States

Bankruptcy Court for the Eastern District of Pennsylvania.[3]  On April 9, 2012, debtors filed a

Complaint in Bankruptcy Court, in which they sought to invalidate JPM's interests in the

Doylestown property and to avoid the equitable lien, pursuant to 11 U.S.C. § 544(a) and (b).

This filing commenced the instant Adversary Case Number 12–301.  On July 19, 2012, the

Bankruptcy Court dismissed, in part, the Adversary Proceeding, without prejudice.  Debtors

subsequently appealed to this Court.

       While debtors' appeal was pending, on August 17, 2012, they commenced another

adversary proceeding, Adversary Case Number 12–535, in which they sought to avoid as a

preferential transfer pursuant to 11 U.S.C. § 547 the equitable lien against their former residence.

---

[1]     The Court of Common Pleas ordered debtors to "confirm" the equitable lien within ten
days "by executing an amended and restated note and mortgage effective [August 11, 2005] on
the same terms and conditions as the August 11, 2005 Note and Mortgage assigned to [JPM]."
Docket Entries, J.P. Morgan Chase Bank Nat'l Ass'n v. D'Angelo et al., Civ. No. 2006–6047
(Bucks Cnty. Ct. Com. Pl.).  Debtors failed to do so.  On June 22, 2011, JPM filed a motion in
the Court of Common Pleas seeking to hold debtors in contempt for their noncompliance, which
was subsequently granted on January 12, 2012.  Id.

[2]     The equitable lien amount includes the satisfaction amount of $1 million on the original,
valid mortgage plus the amount of homeowner's insurance premiums and taxes paid by JPM
between 2006 and 2010.

[3]     That proceeding was later converted to a Chapter 11 proceeding, with the debtors
asserting the rights of a bankruptcy trustee as "debtors-in-possession."

The Bankruptcy Court subsequently consolidated Adversary Case Number 12–535 with the instant adversary proceeding pursuant to the Bankruptcy Court's Order dated June 25, 2013.  The proceeding remained in suspense during debtors' then-pending appeal before this Court.

By Order dated March 20, 2013, this Court affirmed the Bankruptcy Court's dismissal of debtors' claim to avoid the equitable lien against their residence pursuant to § 544(a) and (b), and held that the Bankruptcy Court properly concluded that it was barred by the Rooker-Feldman doctrine from disturbing the state court's equitable lien order.

On May 17, 2013, debtors filed a Second Amended Complaint, containing nine counts. JPM filed a Motion to Dismiss Second Amended Adversary Complaint and for Abstention on June 3, 2013.  At the end of a hearing addressing the Motion, held on July 2, 2013, the Bankruptcy Court dismissed Counts One through Eight of the Amended Complaint as restatements of claims subject to the Bankruptcy Court's previous dismissal memorandum. However, the court took Count Nine, in which debtors assert that the April 11, 2011 equitable lien order is avoidable pursuant to 11 U.S.C. § 547(b), under advisement.

On February 21, 2014, the Bankruptcy Court dismissed with prejudice Count Nine, the only remaining count of the Amended Complaint, and granted JPM's Motion to Dismiss in its entirety.  Debtors appealed that decision to this Court on April 9, 2014.

**III.    STANDARD OF REVIEW**

A district court reviewing a Bankruptcy Court's judgment on appeal applies a "clearly erroneous" standard to findings of fact.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  The Court reviews the legal determinations de novo.  J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d Cir. 1989).

## IV.    DISCUSSION

### a.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "'raise a right to relief above the speculative level.'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

### b.  Avoidance of Equitable Lien Pursuant to 11 U.S.C. § 547

In Count Nine of the Second Amended Complaint, the subject of the appeal presently before the Court, debtors seek to avoid JPM's equitable lien against their previous property pursuant to 11 U.S.C. § 547(b).  By Order and Memorandum dated February 21, 2014, the Bankruptcy Court dismissed that claim, concluding, as a matter of law, that debtors could not allege facts that, if taken as true, would establish that the equitable lien order involved the transfer of an interest of debtors in property.  The Bankruptcy Court instead determined that the equitable lien order "should be characterized as recognizing a transfer consisting of an equitable assignment of the prior lienholder's security interest."  In re D'Angelo, 505 B.R. at 658.  Thus, the court determined that debtors failed to state a claim under 11 U.S.C. § 547(b).

Debtors argue that the Bankruptcy Court erred in dismissing Count Nine of the Second Amended Complaint with prejudice because: (1) their original pleadings demonstrate that they held an interest in their own home to the exclusion of JPM, and the equitable lien involved their interest in their previous residence; (2) they may cure by amendment any infirmity in existing pleadings to clarify their interests in the property transferred to JPM via the equitable lien; and

(3) because JPM recently admitted to widespread fraud in its mortgage review and approval process,[4] plaintiffs may use that admission to allege facts that, as a matter of law, establish that the equitable lien involved an interest of debtors unlawfully transferred to a fraudulent actor.

In response, JPM contends that the legal authority cited and relied upon by the Bankruptcy Court in dismissing Count Nine of the Second Amended Complaint is sound.  JPM argues that the April 11, 2011 equitable lien order did not transfer any property interest, or in the alternative, did not transfer debtors' interest in their property.  Finally, JPM asserts that debtors' repeated reference to a settlement that resolved litigation involving the marketing and sale by JPM of residential mortgage-backed securities did not involve any admission, statement, or reference to debtors' mortgage.

"The Bankruptcy Code's avoidable preference provision, 11 U.S.C. § 547(b), allows a bankruptcy trustee to recover certain transfers a debtor made prior to filing a petition in bankruptcy."  In re First Jersey Sec., Inc., 180 F.3d 504, 509 (3d Cir. 1999).  To state a claim under 11 U.S.C. § 547(b), a debtor must allege facts that, if taken to be true, would establish the following elements: (1) a transfer of an interest of the debtor in property; (2) the transfer was made to or for the benefit of a creditor of the debtor; (3) the transfer was made on account of an antecedent debt; (4) the transfer was made while the debtor was insolvent; (5) the transfer was made either (a) within 90 days of the petition date; or (b) if the creditor was an insider, within one year of the petition date; and (6) the transfer enabled the creditor to receive more than it would have received pursuant to a Chapter 7 liquidation.  11 U.S.C. § 547(b).

---

[4]     Debtors cite to "Appendix C" attached to Appellant's Brief, a November 2013 settlement between JPM and the United States Department of Justice and the Attorney Generals of several states, as containing this "admission."

The only issue on appeal is whether debtors allege facts that, if taken as true, would establish that the April 11, 2011 equitable lien order, resulted in "a transfer of any interest of the debtor in property."  The Court agrees with the Bankruptcy Court that, as a matter of law, the April 11, 2011 equitable lien order, granting an equitable lien in favor of JPM, did not transfer debtors' interest in property, and debtors have thus failed to state a claim warranting avoidance of the equitable lien pursuant to 11 U.S.C. § 547(b).  Under Pennsylvania law, a court, exercising its equitable powers, may impose an equitable lien, regardless of the intent of the parties, "as a remedial device to protect a party against some inequitable loss."  HCB Contractors v. Rouse & Associates, Inc., No. 91-5350, 1992 WL 176142, at *8 (E.D. Pa. July 13, 1992) (internal quotations omitted); see In re Fowler, 425 B.R. 157, 204 (Bankr. E.D. Pa. 2010).  Third Circuit and Pennsylvania case law recognize that an equitable lien consists of the equitable lienholder's right to subrogate the rights of the prior lienholder.  See In re Bridge, 18 F.3d 195, 201 (3d Cir. 1994) (recognizing that the equitable lienholder is subrogated "to the position of the lender whose lien was discharged and permits the new creditor to assert its right to priority against subsequent claimants") (citations omitted); Lewis v. Diethorn, 893 F.2d 648, 651 (3d Cir. 1990) (recognizing that rights of equitable lienholder are subrogated to rights of prior lienholder); Gladowski v. Felczak, 31 A.2d 718, 720 (1943) ("'Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder.'") (quoting Restatement (First) of Restitution § 43 (1937)).

In this case, the equitable lien which debtors seek to avoid arose out of an allegedly fraudulent mortgage to debtors, assigned to JPM in 2006, the funds of which satisfied a previous

lienholder's mortgage against debtors' former residence.  See In re D'Angelo, 475 B.R. at 436.

The equitable lien order, which recognized JPM's interest in the equitable lien, gave JPM the

right to be subrogated to the prior mortgagee's security interest in debtors' residence.  See In re

Bridge, 18 F.3d at 201.  The Court agrees with the Bankruptcy Court that to the extent the

equitable lien order — the only event alleged to have occurred within the 90-day preference

period[5] — itself involved any "transfer" for purposes of § 547(b), it merely involved "the

assignment of the interests of the prior mortgage holder, an interest in which the [debtors]

retained no rights, to [JPM] in exchange for [JPM's] satisfaction of the prior mortgage holder's

lien."  In re D'Angelo, 505 B.R. at 659; see also In re Dier, 296 F. 816, 819 (3d Cir. 1924) ("An

equitable lien springs from an equitable assignment.").  Such a transfer of interests between two

mortgagees did not involve debtors' interest in their property within the purview of § 547(b).

See In re Sanchez, No. 09-41756-E-13, 2011 WL 10656551, at *7 (Bankr. E.D. Cal. Dec. 16,

2011) ("[A] transfer of pre-petition perfected collateral between creditors is not an action against

---

[5]        As the Bankruptcy Court notes, outside the bankruptcy context, the transfer of this
security interest arguably occurred at the time the JPM funds were used to satisfy the prior
creditor's lien against debtors' former residence.  See, e.g., In re Turetsky, 402 B.R. 663, 665–66
(Bankr. W.D. Pa. 2009) (holding that the date of the equitable lien relates back to the debtor's
receipt of the benefit entitling the creditor to an equitable lien); In re Cedar Funding, Inc., 398
B.R. 346, 351 (Bankr. N.D. Cal. 2008) ("Once recognized, an equitable lien is effective back to
the time of the transaction or conduct that created it."); see also Lewis v. Diethorn, 893 F.2d 648,
650 (3d Cir. 1990) (recognizing that an equitable lien may arise as a matter of law, without the
imposition of any order recognizing the existence of an equitable lien).  However, the Court
agrees with the Bankruptcy Court that the timing of the transfer for purposes of § 547(b) is
settled pursuant to this Court's prior decisions.  See In re D'Angelo, 491 B.R. 395 (E.D. Pa.
2013).  Section 547(e)(2)(B) provides that for purposes of § 547, a transfer occurs "at the time
such transfer is perfected, if such transfer is perfected after [] 30 days [from the date of
transfer.]"  This Court previously determined that the "equitable lien was issued on April 11,
2011 by the Bucks County Court of Common Pleas and was recorded in the judgment index, and
thus perfected, on April 12, 2011."  Id. at 404.  Thus, as debtors filed for bankruptcy on June 22,
2011, the perfection of the lien on April 12, 2012 fixed the timing of any transfer as within the
90-day preference period.

the debtor, property of the debtor, property of the estate, or a transfer of property of the estate."); In re Kunze, 459 B.R. 468, 473 (Bankr. D. Kan.2011) (collecting cases finding that the transfer of a mortgage from one lender to another does not involve a transfer of an interest in the property of the debtor or property of the bankruptcy estate). The Court thus concludes that debtors may not avoid the equitable lien order, which recognized JPM's interest in the equitable lien, as a preferential transfer under 11 U.S.C. § 547(b), and affirms the Bankruptcy Court's decision.

### c. Newly-Discovered Fraud

Debtors further argue that JPM's 2013 settlement agreement constitutes a "newly discovered fraud," which compels the Court to vacate the Bankruptcy Court's Order and Memorandum dismissing debtors' Second Amended Complaint and remand the case, pursuant to Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).[6] Although Hazel-Atlas is cited twice in the Appellant's Brief, it was not until the filing of debtors' Reply Brief that the Hazel-Atlas argument was presented.

Based upon the record before the Court, it appears that debtors failed to raise this argument before the Bankruptcy Court. "[A]ny issue not raised in the Bankruptcy Court is deemed waived and [this Court] may not consider it on appeal." Forever Green Athletic Fields, Inc. v. Dawson, 514 B.R. 768, 782 (E.D. Pa. 2014) (citing Belcufine v. Aloe, 112 F.3d 633, 638 (3d Cir. 1997)); see also In re Kaiser Grp. Int'l Inc., 399 F.3d 558, 565 (3d Cir. 2005) (explaining "the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal") (citing Buncher Co.

---

[6]  In Hazel–Atlas Glass Co. v. Hartford–Empire Co., the Supreme Court ruled that "under certain circumstances, one of which is after-discovered fraud," a court may exercise its equitable powers to vacate judgments "to fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of judgments. 322 U.S. 238, 244 (1944), overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17, 97 (1976).

v. Official Comm. of Unsecured Creditors of GenFarm LP IV, 229 F.3d 245, 253 (3d Cir. 2000);

L.P. Maun, M.D., Ltd. v. Salyapongse, 105 B.R. 464, 467 (S.D. Ill. 1989) ("An issue not

properly presented in the court below cannot be raised for the first time on appeal and form a

basis for reversal.") (citations omitted)).  The JPM settlement agreement, which debtors allege

constitutes a newly discovered fraud on the Court, occurred in November 2013, after the hearing

on JPM's Motion to Dismiss the Second Amended Complaint, but approximately three months

before the Bankruptcy Court issued its Order dismissing debtors' Second Amended Complaint.

As debtors' "newly-discovered fraud" argument pursuant to Hazel-Atlas, was not, but could have

been, raised before the Bankruptcy Court prior to its issuance of the February 21, 2014 Order,

the Court deems it waived.  Consequently, absent exceptional circumstances, which are not

presented here, it is not susceptible to review in this Court.  See Forever Green Athletic Fields,

Inc., 514 B.R. at 782 (citing Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp., 884 F.2d 80,

86 (3d Cir. 1989).

Assuming arguendo that debtors' Hazel-Atlas argument is reviewable by the Court, the

argument is meritless.  To "meet the necessarily demanding standard for proof of fraud upon the

court . . . there must be: (1) an intentional fraud; (2) by an officer of the court: (3) which is

directed at the court itself; and (4) in fact deceives the court."  Herring v. United States, 424 F.3d

384, 386-87 (3d Cir. 2005).  "[A] determination of fraud on the court may be justified only by

the most egregious misconduct directed to the court itself, and [] must be supported by clear,

unequivocal and convincing evidence."  Id.; see also Cavalier Clothes, Inc. v. Major Coat Co.,

No. 89-3325, 1995 WL 314511, at *7 (E.D. Pa. May 18, 1995) ("Examples of such conduct [of

fraud upon the court] are bribery of judges, employment of counsel to 'influence' the court,

10

bribery of the jury, and involvement of an attorney (an officer of the court) in the perpetration of fraud.").

Debtors have failed to meet this very heavy burden.  Debtors contend that the alleged fraud that is the basis of their Hazel-Atlas argument is "JP Morgan's underwriting, approval, and payment of money" with respect to their mortgage under forged documents, as revealed in the November 2013 settlement agreement between JPM, the Department of Justice, and the Attorney Generals of various respective states.  The Court notes that the settlement agreement, attached as "Appendix C" to Appellant's Brief, involved an investigation of the packaging, marketing, sale, and issuance of residential mortgage-backed securities by JPM, The Bear Stearns Companies, Inc., and Washington Mutual Bank.  (Appellant's Brief, App. C, 5.)  That settlement agreement makes no direct reference to debtors nor to debtors' mortgage, and thus does not amount to the "clear, unequivocal and convincing evidence" necessary to support debtors' claim for relief under Hazel-Atlas.  See United States v. Reynolds, 447 F. App'x 298, 300 (3d Cir. 2011) ("Relief under Hazel–Atlas is an extraordinary remedy for fraud. . . .").   Moreover, to the extent that the settlement may have implicated debtors, and to the extent the settlement agreement may reveal fraud committed by JPM, debtors do not allege that the fraud was perpetuated by an "officer of the court" as is required to state a claim under Hazel-Atlas.  See 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2870, at 253–54 ("[T]he courts have refused to invoke this concept [fraud upon the court] in cases in which the wrong, if wrong there

was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process.").[7]

## V.     CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's Order of February 21, 2014.  An appropriate order follows.

---

[7]      Debtors further argue that because JPM "has recently admitted widespread fraud in its mortgage review and approval process, a process that included the D'Angelo mortgage, Plaintiffs can use that admission . . . to allege facts that as a matter of law establish that the transfer Plaintiffs seek to avoid" involved debtors' property interest.  (Appellant's Brief at i).  The Court rejects this argument.  As previously noted, the settlement agreement, to which debtors cite as containing JPM's admission of fraud, appears to resolve litigation involving JPM's marketing and sale of residential mortgage-backed securities.  That settlement agreement does not reference debtors' mortgage, let alone include an admission of fraud with respect to their mortgage.  Even if the admission of such fraud existed, debtors have failed to cite any case law in support of the proposition that such a fraud with respect to their mortgage would establish that the equitable lien involved a transfer of debtors' property interest such that debtors could avoid the equitable lien as a preferential transfer pursuant to § 547(b).